IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

BRENDA EBERT,

                          Plaintiff,

          vs.                                    Civil Action No.
                                                 1:07-CV-1166 (LEK/DEP)

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

LEGAL AID SOCIETY OF                  JOANNA S. DAVIS, ESQ.
NORTHEASTERN NY
112 Springs St., Suite 109
Saratoga Springs, NY  12866

FOR DEFENDANT:

HON. ANDREW BAXTER                    JOHN M. KELLY, ESQ.
United States Attorney                Special Asst. U.S. Attorney
Northern District of New
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL             BARBARA L. SPIVAK, ESQ.
Social Security Administration        Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Brenda Ebert, who suffers from a variety of physical medical conditions including, *inter alia*, degenerative disc disease in her lumbar back area, chronic headaches, arthritis and bursitis, as well as depression, has commenced this action pursuant to section 405(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to challenge the Commissioner's denial of her application for supplemental security income ("SSI") payments under the Act.  In support of her challenge plaintiff contends that the agency's determination that she is not disabled, a finding which serves as the lynchpin for the denial of her application for SSI benefits, is not supported by substantial evidence.  Plaintiff argues that in rendering his determination regarding her residual functional capacity ("RFC") the administrative law judge ("ALJ") assigned to hear and determine the matter failed to consider the combined, cumulative effects of her various mental and physical conditions and that as a result, given her limitations, his reliance upon the testimony of a vocational expert who concluded that she is capable of performing only one job available in sufficient numbers in the national and local economies was misplaced.

Having carefully reviewed the record that was before the agency, I conclude that the ALJ's finding of no disability is fatally flawed because it

fails to give adequate consideration to the potentially debilitating effects of the plaintiff's migraine headaches in combination with her other conditions and that the Commissioner's determination, is therefore not supported by substantial evidence.  Accordingly, I recommend that the determination be vacated, and the matter be returned to the agency for further consideration.

I.      BACKGROUND

Plaintiff was born in April of 1958; when the ALJ issued his decision in this matter, she was forty-eight years old.   Administrative Transcript at pp. 96, 358, 388.[1]  Plaintiff is between five feet nine inches and five feet ten and one-half inches in height, and while her weight has tended to fluctuate significantly over time, it was last reported to be one hundred and fifty pounds.  AT 127, 192, 358, 388.  Plaintiff completed the tenth grade, but has been unable to either finish high school or obtain a general educational development ("GED") diploma.  AT 132, 359, 388.  Plaintiff is married, has two adult children, and lives with her husband and mother in a two story home in Greenwich, New York.  AT 387-89.

---

[1]      Portions of the administrative transcript, Dkt. No. 7, which was compiled by the Commissioner and is comprised in large part of the medical records and other evidence that was before the agency when its decision was made, will be cited hereinafter as "AT ___."

Although plaintiff worked for one day in 1999, having been unable to continue longer as a result of experiencing pain, she has been largely unable to work due to her mental and physical limitations since December of 1997.  AT 128.  Prior to that time plaintiff held casual employment in several settings, including as a baker's helper, painter, and laborer.  *Id.; see also* AT 362-63.  None of the jobs held by plaintiff appear to have lasted long enough to qualify as substantial gainful activity as defined under the Act.  *Id.*

Since 2002 plaintiff has treated with Dr. Christopher Thomas, of the Saratoga Care Schuylerville Family Heath Center, for her various conditions.  AT 227-47, 290-316.  The records associated with that treatment reveal extensive complaints of frequent migraine and tension headaches; back, neck, arm, hip, and tail bone pain; and, depression.  *Id.* Over time plaintiff has attempted to use several medications, both over-the-counter and prescription, to address her conditions, including Fiorocet and Elavil, both of which are reported to have helped reduce the pain associated with her headaches.  *See, e.g.* AT 161-62, 171, 238, 241.  *See also* AT 151 (report of contact with agency in which claimant advised receiving relief for her headaches from Fiorocet after about an hour).

On one occasion, April 2, 2002, plaintiff presented as an outpatient

4

at the Glens Falls Hospital complaining of bilateral hip and lumbar spine pain.  AT 282-86.  Upon examination, no fracture or focal bony lesions were identified in either hip.  AT 283.  Addressing plaintiff's lumbar spine condition, on that occasion examiners noted the existence of "very mild degenerative joint disease" at the lower two levels, with "mild relative narrowing of the L5-S1 disc space without spondylosis," and "no bony stenosis of the spinal canal."  AT 285.

In addition to her treatment, plaintiff has been seen consultatively on several occasions for the purpose of assessing her reported physical and mental conditions.  Plaintiff was examined on June 8, 2004 by Dr. Thomas Osika, a psychological consultant retained by the state agency.  AT 178-81.  Based on his evaluation, Dr. Osika diagnosed the plaintiff as suffering from a recurrent major depressive disorder of mild to moderate degree, without psychotic features, and assigned a global assessment of functioning ("GAF") score of sixty.[2]  AT 180.  In his report, Dr. Osika also noted that plaintiff suffers from "an ongoing history of problems with

---

[2]       A person's Global Assessment of Functioning ("GAF") is described as a "clinician's judgment of the individual's overall level of functioning" taking into account "psychological, social and occupational functioning on a hypothetical continuum of mental health-illness."  Diagnostic and Statistical Mental Disorders 32, 34 (4th ed., Text Revision 2000) ("DSM-IV-TR").  A GAF of between 51 and 60 indicates "[m]oderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers)".  Id. at 34 (emphasis in original).

depression and anger management" and recommended that she become involved with out-patient counseling.  AT 181.

Dr. Richard Weiss, a state agency psychiatrist retained to review plaintiff's records, including the recorded notes of her interaction with agency evaluators, completed a mental RFC assessment on July 27, 2004, in which he found that plaintiff was moderately limited in her ability to understand or remember detailed instructions, the ability to carry out detailed instructions, and the ability to set realistic goals or make plans independently of others, but discerned no significant limitations imposed by her mental condition in other relevant domains.  AT 221-24.  In his written assessment, Dr. Weiss noted that plaintiff had no history of psychiatric hospitalizations and was not then undergoing psychiatric treatment, observing that the consultant examiner's perception was "positive for mildly depressed mood," but that the remainder of the mental status examination "was unremarkable."  AT 223.

Plaintiff was also examined by Dr. Michael G. Holland, an orthopedic consultant retained by the state agency, on June 11, 2004.  AT 192-98. Based upon his examination, Dr. Holland observed that plaintiff's shoulders and hips revealed normal range of motion and that she showed positive Waddell signs throughout her low back, suggesting to the

examiner the possibility of "symptom magnification".  AT 193.

Plaintiff's physical condition was also the subject of a report issued on December 29, 2006 by Dr. Richard S. Goodman, a non-examining orthopedic consultant who conducted a review of plaintiff's medical records at the request of ALJ Zolezzi.  AT 317-32.  Based upon his review Dr. Goodman opined that plaintiff suffers from back pain, but found "no evidence of any other orthopedic condition."  AT 318.  In response to interrogatories requesting his opinion regarding the severity of any discerned impairment, Dr. Goodman characterized plaintiff's impairment as "mild" at one point and "mild - less than minimal" at another.  AT 328, 330.  In a written assessment of her RFC, Dr. Goodman opined that plaintiff is capable of lifting fifty pounds occasionally and up to twenty-five pounds frequently; can stand and/or walk six hours in an eight-hour work day; is not affected in her ability to sit, push, or pull less than one hundred pounds; and, suffers from occasional postural limitations in the areas of climbing, balancing, kneeling, crouching, crawling, and stooping.  AT 323-26.

II.    PROCEDURAL HISTORY

A.    Proceedings Before The Agency

Plaintiff protectively filed an application for SSI benefits under the

Act on March 26, 2004, alleging a disability onset date of December 1, 1997.  AT 96-99.  That application was denied on or about August 5, 2004.  AT 26-29.

At plaintiff's request, on October 4, 2005, a hearing was conducted before ALJ Thomas P. Zolezzi to address plaintiff's application for SSI benefits.  AT 354-83.  Testifying at that hearing were the plaintiff, who was represented by counsel, as well as Salvatore Garozzo, a vocational expert retained by the agency.  *Id.*  Following the close of that hearing, after conducting a *de novo* review of the available evidence, ALJ Zolezzi issued a decision on November 30, 2005 concluding that plaintiff was not disabled during the relevant times and thus is ineligible to receive SSI benefits.  AT 51-57.   That determination was vacated on June 9, 2006, however, after review by the Social Security Administration Appeals Council, and the matter was remanded with instructions that the ALJ undertake a further evaluation of the plaintiff's subjective complaints of disabling pain and more fully explain his reasoning for discounting her statements.  AT 62-64.

Upon return of the matter to him, ALJ Zolezzi conducted a second hearing on November 20, 2006.  AT 384-417.  Ms. Ebert was the sole witness to testify at that proceeding, which focused principally upon

plaintiff's contentions regarding the limitations experienced as a result of her conditions.  Following the close of that hearing, ALJ Zolezzi issued a decision dated February 20, 2007.  AT 14-22.  After once again conducting a *de novo* review of available evidence as well as the testimony adduced at both hearings, and applying the now familiar five-step test for determining disability, the ALJ concluded that plaintiff was not disabled at any relevant time and thus not entitled to receive SSI benefits. *Id.*  In arriving at that conclusion, ALJ Zolezzi first determined that plaintiff had not engaged in substantial gainful activity at any relevant time.  AT 16.  The ALJ next found that plaintiff suffers from several impairments of sufficient severity to impose significant restrictions upon her ability to perform basic work activities, including degenerative disc disease, disc protrusions, arthritis, and depression, but that those impairments do not, either individually or in combination, rise to a level sufficient to meet or equal any of the listed, presumptively disabling impairments set forth in the regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.  AT 16.

Before proceeding to the next step of the disability algorithm, ALJ Zolezzi determined that despite her impairments the plaintiff retains the RFC to perform simple entry-level light work, further described by the ALJ as follows:

[s]he is able to lift 20 pounds occasionally and 10 pounds frequently.  She is able to stand, walk, and sit for 6 hours each during an 8 hour work day with regular breaks.  However, any job she does must be one where she can make simply decisions but no complex decision-making; (2) it must be low stress job which involves no planning, no scheduling, no report writing, no supervising, and no high production quotas; (3) there should be little or no change in the work setting or work environment; (4) she can have occasional but not frequent interaction with co-workers–she can work in proximity of co-workers but only occasionally in coordination or conjunction with them; (5) there should be no little or no interaction with the public; (6) there should be nothing requiring use of math skills; (7) there should be no concentrated fumes, gases, odors, smoke, dust, and poor ventilation.

AT 16-17.[3]  In arriving at that conclusion the ALJ considered but rejected

---

[3]    By regulation, light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

as not fully credible plaintiff's subjective complaints of disabling pain, including those associated with her migraine headaches, particularly in light of the extent of her daily activities and the lack of substantiating medical evidence.  AT 17-18.

After determining at step four that plaintiff had no past relevant work experience of significance, the ALJ proceeded to step five of the disability analysis, looking first to the medical vocational rules set forth in the regulations (the "grid"), 20 C.F.R. Pt. 404, Subpt. P, App. 2 as a framework, noting that application of plaintiff's RFC and other relevant characteristics would direct a finding of no disability, based upon Rule 202.17 of the grid.  AT 21-22.  Observing, however, that plaintiff's nonexertional limitations could be viewed as significantly eroding the occupational base upon which the grid is predicated, in reaching his decision the ALJ relied upon responses to the hypothetical questions posed to the vocational expert during the first hearing closely approximating his finding regarding plaintiff's limitations, to the effect that plaintiff can perform the functions of a housekeeper, and that there are jobs in sufficient numbers in both the regional and national economy in that occupation available to the plaintiff.  AT 22.  The ALJ thus concluded that plaintiff is not disabled and, accordingly, not entitled to receive SSI

benefits.  *Id.*

The ALJ's decision became a final determination of the agency on September 11, 2007, when the Appeals Council denied plaintiff's request for review of that opinion.  AT 4-6.

    B.    <u>This Action</u>

Plaintiff commenced this action on November 1, 2007.  Dkt. No. 1. Issue was joined by the Commissioner's filing of an answer on February 11, 2008, preceded by submission on December 28, 2007 of an administrative transcript of proceedings and evidence before the agency. Dkt. Nos.  7, 8.  With the filing of plaintiff's brief on March 25, 2008, Dkt. No. 10, and that on behalf of the Commissioner on May, 8, 2008.  Dkt. No. 12, the matter is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(d).[4]  *See also* Fed. R. Civ. P. 72(b).

III.    <u>DISCUSSION</u>

---

[4]    This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

A.    Standard of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal

v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.

2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817

F.2d 983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to

whether the Commissioner applied the proper legal standards, his

decision should not be affirmed even though the ultimate conclusion

reached is arguably supported by substantial evidence.  *Martone*, 70 F.

Supp. 2d at 148 (citing *Johnson*, 817 F.2d at 986).  If, however, the

correct legal standards have been applied and the ALJ's findings are

supported by substantial evidence, those findings are conclusive, and the

decision should withstand judicial scrutiny regardless of whether the

reviewing court might have reached a contrary result if acting as the trier

of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d

Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998)

(Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427 (quoting *Consolidated Edison Co.*, 308 U.S. 229, 59 S. Ct. 219); *Martone,* 70 F. Supp. 2d at 148 (quoting *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of

42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record, and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *See Parker*, 626 F.2d at 235; *see also Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 644 (2d Cir. 1983).

     B.    <u>Disability Determination - The Five-Step Evaluation Process</u>

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that [s]he is not only
> unable to do [her] previous work but cannot,
> considering [her] age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the
> immediate area in which [s]he lives, or whether a
> specific job vacancy exists for [her], or whether
> [s]he would be hired if [s]he applied for work.  For
> the purposes of the preceding sentence (with
> respect to any individual), "work which exists in the
> national economy" means work which exists in
> significant numbers in the region where such
> individual lives or in several regions of the country.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it

16

meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone*, 70 F. Supp.2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

C.    The Evidence In This Case

17

In support of her challenge to the Commissioner's determination, plaintiff essentially raises two arguments.  First, she contends that the ALJ's decision failed to consider her condition as a whole and the cumulative, limiting affects of her mental and physical conditions upon her ability to perform work-related functions.  Additionally, plaintiff asserts that she is incapable of meeting the exertional demands associated with the one occupation found by the vocational expert to be appropriate to her circumstances – working as a housekeeper.

During the two hearing sessions plaintiff testified to experiencing significant pain in her back, tail bone, shoulders, arms, hips, and legs.  AT 360-61, 389, 407-09.  Plaintiff stated that because of her physical impairments, she is limited in her ability to stand and/or walk to between five and fifteen minutes, or approximately one-half block; she can sit for only between ten and fifteen minutes; she lacks strength in her hands; and, she is able to lift only up to twenty pounds.[5]  Plaintiff further testified that in light of her depression she finds it difficult to be around other people.  AT 377, 405.

While ALJ Zolezzi found that plaintiff suffers from diagnosed medical

_____

[5]      Plaintiff's testimony regarding her capacity to lift is consistent with the ALJ's determination regarding this factor. *See* AT 16-17, 367-69, 389, 396-98.

18

conditions capable of producing such symptoms, considering the medical

evidence in the record, he concluded that plaintiff's statements regarding

the limiting effects of her conditions were not fully credible.  AT 17-18.

This portion of the ALJ's determination is at least partially supported by

substantial evidence in the record.  Objective findings regarding plaintiff's

hip and spine conditions are for the most part benign.  *See, e.g.,* AT 193,

282, 285.  Records of plaintiff's treatment over time with Dr. Thomas

reveal only relatively modest treatment, with no suggestion of surgical

intervention.[6]  *See* AT 182-91, 227-47.  A report of a consultive orthopedic

examination by Dr. Holland, conducted in July of 2004, was relatively

unremarkable, revealing normal range of motion in all directions in

plaintiff's lumbar spine.  AT 193.  Based upon his examination and

objective evidence, Dr. Holland characterized plaintiff's range of motion as

normal and noted that there was indication of possible symptom

magnification.  *Id.*

---

[6]    A plaintiff's unexplained failure to avail herself of treatment could support an inference that the effects of her conditions are not as great as alleged.  *See Toro v. Chater*, 937 F. Supp. 1083, 1093 (S.D.N.Y. 1996).  "An ALJ [,however,] may not draw negative inferences from a claimant's lack of treatment without considering any explanations the claimant may provide."  *Campbell v. Astrue*, No. 07-CV-1551 (JCH), 2009 WL 279104, at *6 (D. Conn. Jan. 23, 2009); *see also, Charlton v. Commissioner of Social Security*, 08-CV-142, 2009 WL 838118, at *13 (N.D.N.Y. Mar. 26, 2009) (Hurd, M.J.) (citing *Campbell*).  Such an inference could be negated, for example, upon a showing that the plaintiff's failure to obtain treatment was related to finances.  *McNight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990) (collecting cases).

The evidence in the record regarding plaintiff's depression is similarly unremarkable.  Plaintiff has never undergone hospitalization or sought psychiatric or psychological treatment, other than for an apparently brief period of time not specified in the record.[7]  After conducting a consultative psychological evaluation in June of 2004, Dr. Thomas Osika opined that the plaintiff suffers from a major depressive disorder, recurrent, mild to moderate, though without psychotic features, but he did not indicate the existence of any significant resulting limitations and only recommended outpatient counseling to assist the plaintiff in dealing with anger management issues and symptoms of anxiety.  AT 180-81.  After reviewing available records Dr. Weiss, a psychiatric consultant, rendered an opinion and prepared a psychiatric review technique form with minimal findings.  AT 221-23.  These findings are corroborated by the notes of plaintiff's treating physician, Dr. Thomas, who on September 6, 2005 indicated that plaintiff's depression was stable with use of the prescribed Zoloft.  AT 292.

---

[7]      During her first hearing, plaintiff testified that she saw a psychiatrist or psychologist at some unspecified point in time at Amsterdam Mental Health and was first prescribed Paxil, and later Zoloft.  AT 365.  Plaintiff was unable to recall the name of the physician seen, however, and her counsel was therefore unable to procure medical records associated with that treatment.  *See* Plaintiff's Brief (Dkt. No. 10) at p. 10, n. 3.

While ALJ Zolezzi's analysis of the limitations resulting from plaintiff's back pain and mental condition are well supported, there nonetheless remains a conspicuous deficiency in his decision as it relates to his consideration of plaintiff's migraine headaches.  Despite significant evidence of reports by the plaintiff of migraine and tension headaches extending over a period of many years, *see e.g.,* AT 227-47, 290-315 and 408, the ALJ did not even include headaches among the impairments listed at step two of his decision.[8]  AT 16.  After discussing plaintiff's headaches briefly, the ALJ discounted her complaints, relying upon an office note from Dr. Muller, dated February 11, 2000, stating that after taking Elavil the symptomology associated with the plaintiff's headaches had improved to a point where she sustained an average of only three per month.  *See* AT 18 (*citing* AT 241).  That statement, however, ignores evidence in the record, particularly Dr. Thomas' notes, revealing that plaintiff's headaches persisted and became worse after she suffered abuse at the hands of her ex-husband, causing her to experience severe

---

[8]     The evidence in the record relating to plaintiff's headaches and their affect upon her ability to work, to be sure, is somewhat equivocal.  When asked about any medical conditions that limit her ability to work, plaintiff identified chronic back pain, depression, arthritis and bursitis, but failed to make mention of her chronic tension/migraine headaches.  AT 127.

pain, aggravated by noise and light, and requiring the prescription of

Fiorocet, which, in turn, has caused plaintiff to experience difficulty with

concentration and memory.  *See* AT 366-67; *see also* AT 227-47, 290-

315.

In contrast to the ALJ's apparent minimization of the frequency and

affects of plaintiff's headaches, she testified during the hearing to

experiencing tension headaches and/or migraines on a daily basis and

that her headaches may last anywhere from a few hours to an entire day.

AT 366-67.  Plaintiff stated that at times she goes to bed with a migraine,

only to wake up with one in the morning.  AT 366.  Plaintiff described the

pain associated with migraines as existing in the right side of her head,

behind her eye, and radiating to the top of her head.  *Id.*  Plaintiff

explained that both noise and light aggravate her headaches.  AT 414.

Efforts by the plaintiff to minimize the symptoms associated with her

headaches have included the use of cold and heat packs and lying down,

although she stated that those efforts are not always successful.  AT 366-

67, 395.  Plaintiff also noted that while she has been prescribed Fiorocet

for her headaches, she experiences side affects from that medication,

including difficulty in concentration and memory loss.  AT 366.

It is well established that when assessing a claimant's RFC and

determining whether he or she can perform either past relevant work or other available work within the national and regional economies, despite applicable limitations, an ALJ must consider all impairments, exertional and non-exertional, which limit the person's ability to perform work-related functions. *Johnston v. Astrue*, No. CV-07-5089, 2008 WL 4224059, at *9 n.9 (E.D.N.Y. Sept. 8, 2008) (citing S.S.R. 96-8p at *1).  In this instance, when assessing her RFC the ALJ plainly failed to consider the cumulative impact of all of plaintiff's impairments, most notably the contributing affects of her headaches.  In this regard, it is significant that when questioned by plaintiff's counsel the vocational expert, upon whose opinion the ALJ's finding is premised, acknowledged that the existence of migraines affecting plaintiff's ability to work could create concern for an employer.  AT 381-82.

Having concluded that the Commissioner's determination cannot withstand judicial scrutiny as a result of this flaw in his decision, the next question to be addressed is the proper scope of the resulting remand. Stated differently, the issue becomes whether the court should direct a finding of disability and grant the plaintiff's request that the matter be remanded to the agency for the limited purpose of calculating benefits owing.

Section 405(g) of the Social Security Act contemplates two types of remands: remands pursuant to sentence four of that section, and those pursuant to sentence six.  42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 97-98, 111 S. Ct. 2157, 2163 (1991) (citing *Sullivan v. Finkelstein,* 496 U.S. 617, 623-27, 110 S. Ct. 2658, 2662-66 (1990)). Sentence four provides that:

> [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g).  As this language plainly suggests, sentence four envisions the entry of judgment upon the pleadings based upon judicial review of a transcript of the record below.[9]

---

[9]   By contrast, sentence six of section 405(g) provides, in part:

> [t]he court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and

The court thus retains discretion to modify or reverse the decision below and, if deemed appropriate, to remand the matter to the agency in order to allow gaps in the evidentiary record to be filled, or identified errors to be addressed.  *E.g., Rosa v. Callahan,* 168 F.3d 72, 82-83 (2d Cir. 1999); *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir. 1996).  Alternatively, when there is no reason to believe that remand would serve any useful purpose the court may, in its discretion, remand solely for a calculation of benefits. *Balsamo v. Chater,* 142 F.3d 75, 82 (2d Cir. 1998).

The court is not well positioned to make a determination of plaintiff's RFC in the first instance, taking into consideration the cumulative effects of her various conditions, including migraine headaches.  For this reason, despite the unfortunate fact that there have already been two prior hearings in connection with plaintiff's application for SSI benefits, I am

_____

decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based. . . .

*Id.* Sentence six, then, contemplates remand in one of two situations – where the agency requests remand before answering the complaint ("clause one"), or where new, material evidence is presented that was for good cause not presented before the Administration ("clause two").  *Id.*; *Shalala v. Schaefer*, 509 U.S. 292, 297 n.2, 113 S. Ct. 2625, 2629 n.2 (1993) (citing *Melkonyan*, 501 U.S. at 100 n.2, 111 S. Ct. at 2164 n.2); *Raitport v. Callahan,* 183 F.3d 101, 104 (2d Cir. 1999); *Medina v. Apfel,* No. 00 CIV. 3940, 2001 WL 1488284, at *4 (S.D.N.Y. Nov. 21, 2001).   This case presents neither of these situations.

constrained to recommend that the court refer the matter back to the agency, considering its unique expertise, for further consideration of plaintiff's conditions and a determination regarding disability.

IV.     SUMMARY AND RECOMMENDATION

Plaintiff's application for SSI benefits has been the subject of two hearings and resulting ALJ determinations, both concluding that she is not disabled.  The determination now before the court, however, gives short shrift to plaintiff's migraine headaches, and their impact, together with her other mental and physical conditions, upon her ability to perform work-related functions, thereby infecting the ALJ's RFC finding, and in turn the conclusion that plaintiff is not disabled.  I therefore conclude that the Commissioner's determination cannot withstand judicial review, even given the modest, deferential standard of review to be applied, and recommend that the matter be remanded for further consideration of the impacts of that condition.  Accordingly, it is therefore hereby respectfully

RECOMMENDED, that plaintiff's motion for judgment on the pleadings be GRANTED, the Commissioner's determination of no disability VACATED, and the matter REMANDED to the agency for further consideration consistent with this recommendation.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court within TEN days.  FAILURE TO SO OBJECT

TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C.

§ 636(b)(1);  FED. R. CIV. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85

(2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      October 22, 2009
               Syracuse, NY

27